IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **MICHAEL DELANEY,**<br><br>*Plaintiff,*<br><br>v.<br><br>**CITY OF TULSA, OKLAHOMA, et al.,**<br><br>*Defendants.* | Case No. 21-CV-544-GAG-SH |

**OPINION AND ORDER**

**GUSTAVO A. GELPÍ, Circuit Judge.**[1]

Before this Court are the following four motions: (1) Defendant City of Tulsa, Oklahoma's ("Defendant Tulsa") motion for summary judgment (Dkt. No. 56); (2) Defendant Aaron Russell ("Defendant Russell") motion for summary judgment (Dkt. No. 61); (3) Defendant Russell's motion *in limine* (Dkt. No. 67); and (4) Defendant Tulsa's motion *in limine* (Dkt. No. 68). For the reasons set forth herein, both motions for summary judgment are **DENIED**, Defendant Russell's motion *in limine* is **DENIED**, and Defendant Tulsa's motion *in limine* is **GRANTED IN PART AND DENIED IN PART**.

I.  **FACTUAL AND PROCEDURAL BACKGROUND**

This case arises from the March 21, 2020 shooting of Plaintiff Michael Delaney ("Plaintiff") by Defendant Russell, an officer at Tulsa Police Department ("TPD"). (Dkt. No. 56 at 7-8; Dkt. No. 61 at 8-9, 11-13; Dkt. No. 71 at 6-8; Dkt. No. 72 at 2-4.)

---

[1] The Honorable Gustavo A. Gelpí, Circuit Judge, United States Court of Appeals for the First Circuit, sitting by designation.

### A. The Events of March 21, 2020

At approximately 1:15 a.m. on March 21, 2020, Coy Brown called 9-1-1 to report that a red and white GMC Yukon had been stopped—for a long time and with its lights on—in the street in front of the home at which Brown was located. (Dkt. No. 56 at 7; Dkt. No. 61 at 9; Dkt. No. 71 at 6; Dkt. No. 72 at 2-3.) Defendant Russell was the first officer to arrive at the scene, followed shortly thereafter by Officers Andrew St. John ("Officer St. John") and Kevin Pentecost ("Officer Pentecost"). (Id.) After having parked his patrol vehicle behind the vehicle that matched the caller's description, Defendant Russell approached the driver's side of the suspect vehicle. (Id.) Plaintiff, a Black male, was sleeping inside the vehicle. (Dkt. No. 56 at 8; Dkt. No. 61 at 10; Dkt. No. 71 at 6; Dkt. No. 72 at 2.)

What occurred next is largely disputed by the parties. For its part, Defendant Tulsa contends that, Defendant Russell shined his flashlight into the vehicle and observed various disorganized tools and household items—a sign to him that crime was afoot. (Dkt. No. 56 at 7.) After Defendant Russell reached the driver's side window, Defendant Tulsa says, he turned the flashlight on Plaintiff and asked him to roll down the window. (Dkt. No. 56 at 8.) Plaintiff partially opened the window. (Id.) From Defendant Russell's vantage point, Plaintiff appeared disoriented: he had watery and bloodshot eyes, and his responses to Defendant Russell's questions appeared slurred and incoherent. (Id.) At some point during the exchange, Defendant Russell was joined at the driver's side window by Officer Pentecost. (Id. at 9.)

As Defendant Russell scanned the rest of the vehicle with his flashlight, Defendant Tulsa contends, he noticed what he thought was a pistol grip and trigger of a handgun. (Id.) Although Defendant Russell had no reason to believe that Delaney wrongfully possessed the firearm (which was later identified as a pellet gun), he reacted by shouting "gun!"; drawing his weapon; and ordering Plaintiff out of the car. (Id. at 8.) Because Plaintiff did not comply with that order,

2

Defendant Russell attempted to physically remove him. (Id.) Defendant Tulsa asserts that Plaintiff resisted Defendant Russell by leaning away, putting the vehicle in drive, closing the door, and driving off. (Id.) It is undisputed that Defendant Russell responded to Plaintiff's flight by discharging his firearm, firing five rounds at the vehicle and striking Plaintiff's shoulder. (Id.) Defendant Tulsa admits, Officer Pentecost was not in the way of Plaintiff's vehicle; instead, he was approximately three feet away from it on the driver's side. (Id. at 9.)

Defendant Russell recounts the events differently. He contends that he responded to the 9-1-1 call because of his concerns about Officer Pentecost—the primary officer dispatched to the scene. (Dkt. No. 61 at 9.) Defendant Russell asserts that Officer St. John shared his concerns about Officer Pentecost, pointing to Officer St. John's testimony that Officer Pentecost was "sloppy," lackadaisical," and someone who did "not tak[e] things very seriously." (Id. at 9.) And Officer Pentecost, Defendant Russell asserts, acted in accordance with his low expectations during the encounter with Plaintiff. (Id. at 11-12.) Defendant Russell indicates that Officer Pentecost approached Plaintiff's vehicle with his hands tucked into his protective vest—an allegedly "unsound tactical position"—and stood next to Defendant Russell but in front of the open driver's side door. (Id.) So, as Plaintiff began to flee, Defendant Russell says, he thought—albeit mistakenly—that Officer Pentecost was in danger of being hit by the vehicle. (Id. at 20.) Defendant Russell further recalls that he could not see Officer St. John, which led him to believe that Officer St. John, too, could be in danger. (Id.)

Plaintiff's perspective is, of course, distinct from that of both Defendants. Plaintiff asserts that, at the beginning of the encounter, he did not know whether the men who approached his vehicle were police officers. (Dkt. No. 71 at 6; Dkt. No. 72 at 5.) Moreover, he contends, Defendant Russell's bright flashlight was disorienting and temporarily blinding. (Dkt. No. 71 at 7; Dkt. No. 72 at 6.) That confusion and disorientation, Plaintiff posits, is crucial context. He

3

asserts that he complied at first when he heard Defendant Russell draw his gun, yelling "Hands up! Hands up!" (Id.) However, moments later, Defendant Russell ordered Plaintiff to "[g]et out of the fucking car," and from Plaintiff's view, Defendant Russell lunged toward him. (Id.) Plaintiff then said, "you going to shoot." Disoriented and believing that Defendant Russell was going to kill him, Plaintiff began to flee. (Id.) He was then struck in the shoulder by one of Defendant Russell's bullets.

### B. Investigation and Charges

Following the events of March 21, 2020, Lieutenant Brandon Watkins of the Homicide Unit conducted an investigation. (Dkt. No. 56 at 9.) After viewing the body-warn camera footage, Lt. Watkins determined that there was no evidence to support a charge against Plaintiff for assault and battery with a deadly weapon. (Id.)

Defendant Russell was also investigated. Following grand-jury proceedings, Defendant Russell was indicted on a misdemeanor charge of Reckless Conduct with a Firearm, in violation of 21 O.S. § 1289.11. (Dkt. No. 56 at 9; Dkt. No. 72 at 4.) Defendant Russell entered a plea of no contest, admitting that the witnesses and evidence against him could prove the charge. (Dkt. No. 56 at 10; Dkt. No. 72 at 4.) TPD's Internal Affairs division—specifically, its Deadly Force Review Board—also reviewed the events of March 21, 2020. Finding Defendant Russell's conduct to be out of compliance with TPD policy, TPD terminated Defendant Russell's employment. (Id.)

### C. Procedural History

On December 17, 2021, Plaintiff filed a complaint in this Court, alleging claims under 42 U.S.C. § 1983 and the Oklahoma Governmental Tort Claims Act against both Defendants. (Dkt. No. 2.) Following discovery, Defendants moved each moved for summary judgment and filed motions *in limine*.

This Court turns first to the motions for summary judgment.

## II. SUMMARY JUDGMENT MOTIONS

### A. Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A fact is only "material" for purposes of summary judgment if a dispute over that fact "might affect the outcome of the suit under the governing law." *Id.* at 248. A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The dispute is not genuine if it merely involves "some metaphysical doubt as to the material facts." *Matsuhita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "In applying this standard, we view the evidence and the reasonable inferences to be drawn from the evidence in the light most favorable to the nonmoving party." *Wise v. Caffey*, 72 F.4th 1199, 1205 (10th Cir. 2023) (quoting *Schaffer v. Salt Lake City Corp.*, 814 F.3d 1151, 1155 (10th Cir. 2016)).

### B. Defendant Russell's Motion for Summary Judgment

Defendant Russell moves for summary judgment on one ground: qualified immunity. "[A] defendant's assertion of qualified immunity from suit under 42 U.S.C. § 1983 results in a presumption of immunity." *Est. of Taylor v. Salt Lake City*, 16 F.4th 744, 757 (10th Cir. 2021) (quoting *Bond v. City of Tahlequah*, 981 F.3d 808, 814 (10th Cir. 2020), *rev'd on other grounds*, 595 U.S. 9 (2021) (per curiam)). To overcome this presumption, a plaintiff must show that: "(1) the officer['s] alleged conduct violated a constitutional right, and (2) it was clearly established at the time of the violation, such that every reasonable official would have understood, that such conduct constituted a violation of that right." *Id.* (internal quotation marks and citations omitted).

Plaintiff asserts that Defendant Russell violated his Fourth Amendment right to be free from unreasonable seizure. U.S. Const. amend. IV; *see Andersen v. DelCore*, 79 F.4th 1153, 1163 (10th Cir. 2023) ("Excessive force claims arising out of a law enforcement investigation implicate the Fourth Amendment and its protections against unreasonable seizures." (citation omitted)). "As with all seizures, '[t]o establish a constitutional violation, the plaintiff must demonstrate the force used was objectively unreasonable." *Andersen*, 79 F.4th at 1163 (quoting *Est. of Taylor*, 16 F.4th at 759). To assess the reasonableness of an officer's use of force, courts employ a balancing test, weighing the three nonexclusive factors originally propounded by the Supreme Court in *Graham v. Connor*, 490 U.S. 386 (1989): "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." *Andersen*, 79 F.4th at 1163 (quoting *Graham*, 490 U.S. at 396). Courts must "assess the reasonableness of 'a particular use of force' from 'the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (quoting *Graham*, 490 U.S. at 396-97). In qualified immunity cases, however, courts typically resolve factual disputes in favor of the plaintiff, which "usually means adopting . . . the plaintiff's version of the facts." *Wise*, 72 F.4th at 1205 (quoting *Scott v. Harris*, 550 U.S. 372, 378 (2007)).

Here, genuine issues of material fact preclude this Court from finding that Defendant Russell's use of force was reasonable. For instance, the body-warn camera footage does not resolve any of the issues in Defendant Russell's favor, *i.e.*, it does not conclusively demonstrate that Defendant Russell reasonably feared that his or his fellow officers' lives were at risk. What is more, the record evidence seems to suggest that Officer Pentecost was, in fact, not in imminent danger from Plaintiff's flight. In any event, even if this Court were to give credence to Defendant Russell's belief that either Officer Pentecost or Officer St. John was in harm's way, it would seem

6

counterintuitive to discharge his firearm five times in the direction where he believed his fellow officer to be standing. In short, it is better left to a jury to decide whether Defendant Russell's use of force was reasonable.

The inquiry does not stop there, however; the plaintiff must also "show that 'the constitutional or statutory rights the defendant allegedly violated were clearly established at the time of the conduct at issue.'" *Id.* at 1208 (quoting *Nelson v. McMullen*, 207 F.3d 1202, 1206 (10th Cir. 2000)). "To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent." *District of Columbia v. Wesby*, 583 U.S. 48, 589 (2018). The rule must be firmly settled, *i.e.*, "[t]he plaintiff must show there is a 'Supreme Court or Tenth Circuit decision no point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains.'" *Wise*, 72 F.4th at 1208-09 (quoting *Doe v. Woodard*, 912 F.3d 1278. 1289 (10th Cir. 2019)). The precedent need not be "directly on point"; it need only "involve[] 'materially similar conduct' or appl[y] 'with obvious clarity' to the conduct at issue." *Vogt v. McIntosh Cnty., Okla., Bd. of Cnty. Com'rs*, 98 F.4th 1013, 1018 (10th Cir. 2024) (first quoting *Kisela v. Hughes*, 584 U.S. 100, 104 (2018); and then quoting *Apodaca v. Raemisch*, 864 F.3d 1071, 1076 (10th Cir. 2017)).

Here, Plaintiff has provided such clearly established precedent. The Tenth Circuit has held that an officer's "use of deadly force to stop a fleeing vehicle is unreasonable unless there is an immediate threat of harm to himself or others." *Reavis Est. of Coale v. Frost*, 967 F.3d 978, 995 (10th Cir. 2020). There are material factual disputes as to whether there was an immediate threat of harm to Defendant Russell or his fellow officers. Indeed, the record evidence suggests that neither Russell nor his fellow officers were in front of the moving vehicle. And, again, Defendant Russell's decision to shoot in the direction of the vehicle—where, he claims, he believed his fellow officers to be—undermines his position. This issue is best left to the jury to resolve.

7

Therefore, Defendant Russell's motion for summary judgment (Dkt. No. 61) is denied.

### C. Defendant Tulsa's Motion for Summary Judgment

Defendant Tulsa moves for summary judgment, arguing (1) that Plaintiff's *Monell* claim must fail because he cannot prove that a constitutional violation resulted from a city policy, custom, or practice; and (2) that Plaintiff's negligence claim falters, too, because Defendant Russell acted beyond the scope of his employment. This Court addresses each contention in turn and finds them unpersuasive.

#### i. *Monell* Claim

To prevail on claim of municipal liability under 42 U.S.C. § 1983—*i.e.*, a *Monell* claim—a plaintiff must establish: (1) the existence of a municipal policy, practice, or custom by which the plaintiff was denied a constitutional right, and (2) that said policy, practice, or custom was the moving force behind the constitutional violation (i.e., "whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation"). *City of Canton v. Harris*, 489 U.S. 378, 385, 389 (1989). The Tenth Circuit has delineated several types of actions that may constitute a municipal policy, practice, or custom:

> (1) "a formal regulation or policy state"; (2) an informal custom "amoun[ting] to 'a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law'"; (3) "the decisions of employees with final policymaking authority"; (4) "the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval"; or (5) the "failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused."

*Bryson v. City of Oklahoma City*, 627 F.3d 784 (10th Cir. 2010) (quoting *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189-90 (10th Cir. 2010)).

Plaintiff pursues only a failure-to-train theory.² Although the record is thin in support of Plaintiff's position, this Court will permit the failure-to-train claim to proceed to trial.

To establish a failure-to-train claim under *Monell*, a plaintiff must put forth evidence of three elements: (1) "the existence of a county policy or custom involving deficient training"; (2) "the policy or custom's causation of an injury"; and (3) "the county's adoption of a policy or custom with deliberate indifference." *Lance v. Morris*, 985 F.3d 787, 800 (10th Cir. 2021) (citing *Waller v. City & Cnty of Denver*, 932 F.3d 1277, 1283-84 (10th Cir. 2019)).

Here, Plaintiff has put forth sufficient proof for a reasonable juror to find in his favor. First, the extent to which TPD trained Defendant Russell on when it is appropriate to approach and go "hands-on" during vehicle stops—as opposed to retreat and wait for backup—is disputed. Indeed, Defendant Russell that he was not adequately trained on how to approach this encounter. Thus, it is best left for a jury to decide whether the training policies were, in fact, deficient. Second, the record suggests that Defendant Russell's decision to grab hold of Plaintiff during the vehicle extraction resulted in Plaintiff's flight, the risk to Defendant Russell's fellow officers, and in turn, the shooting of Plaintiff. Third, although Plaintiff does not establish Defendant Tulsa's notice by pointing to a pattern of similar misconduct, he does so by reference to his constitutional injury which, he contends, is "highly predictable or plainly obvious consequence of a municipality's action or inaction." *Hinkle v. Beckham Cnty. Bd. of Cnty. Com'rs*, 962 F.3d 1204, 1241 (10th Cir. 2020) (quoting *Waller*, 932 F.3d at 1284). Put differently, police officers routinely conduct stops of vehicles, and decisions to approach or to retreat and call for back up are highly likely to recur.

---

² As such, Plaintiff has abandoned any claim based on the other policy or custom theories of *Monell* liability. *See Barre v. Ramsey*, 601 F. Supp. 3d 1038, 1064 (N.D. Okla. 2022) (holding that plaintiff's failing to oppose motion for summary judgment with respect to a claim resulted in abandonment of said claim).

Inadequate training in that context could very well lead to highly predictable constitutional violations. As such, given the factual disputes as to the extent of training TPD provided its officers in approaching vehicles and conducting extractions, this Court finds the question is better left to a jury. *See Lance*, 985 F.3d at 802-03 (holding that the three-part test of deliberate indifference is a "workable" means for a factfinder "to determine whether a particular problem is likely to recur enough to alert [policymakers] to an obvious deficiency in the training").

   ii. Negligence Claim

Defendant Tulsa moves for summary judgment, too, on Plaintiff's negligence claim. Defendant Tulsa's only argument is that it cannot be held liable for Defendant Russell's actions committed beyond the scope of his employment.[3] This argument is unpersuasive.

Oklahoma law employs the following test to determine whether a law enforcement officer acted within the scope of employment: "'liability exists for acts of officers that can be described as abuses of lawful power' but not for 'an unlawful usurpation of power the officer did not rightfully possess.'" *Barnes v. United States*, 707 F. App'x 512, 517 (10th Cir. 2017) (unpublished) (quoting *DeCorte v. Robinson*, 969 P.2d 358, 361-62 (Okla. 1998)). "[C]onduct may be within the scope of employment, even if it is unauthorized, if it is of the same general nature as that authorized or is incidental to the conduct authorized." *Id.* at 518 (citation omitted). Importantly, an officer who uses excessive force, although unauthorized to do so, may still be acting within the scope of employment. *See id.* (explaining that under test adopted by Oklahoma courts, an officer who uses

---

[3] Defendant Tulsa, a city, does not enjoy Eleventh Amendment immunity. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280-81 (1977) (explaining that Eleventh Amendment immunity from suit in federal courts does not extend to counties or cities); *see also Mascheroni v. Bd. of Regents of Univ. of Cal.*, 28 F.3d 1554, 1559 (10th Cir. 1994), *abrogated on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) ("[A]rms of the state enjoy Eleventh Amendment immunity, whereas political subdivisions such as counties and cities do not." (citations omitted)).

excessive force may still be acting within scope of employment).

Here, there is no dispute that Defendant Russell was acting within the scope of his employment when he initially responded to the 9-1-1 call and began investigating the stopped vehicle. Nor do Defendants seem to dispute that all of Defendant Russell's acts before firing his weapon were conducted within the scope of his employment, even if contrary to policy. In addition, Defendant Russell testified in his deposition that he acted in accordance with Defendant Tulsa's policies during the encounter with Plaintiff. Given this record, this Court cannot say that Defendant Russell's discharging his firearm during the course of performing his duties was beyond the scope of his employment. *See Tuffy's, Inc. v. City of Oklahoma City*, 212 P.3d 1158, (Okla. 2009) ("Whether a police officer's actions were taken within the scope of employment is a jury question unless only one reasonable conclusion can be drawn from the facts alleged."); *cf. O'Shea v. Welch*, 350 F.3d 1101, 1107 (10th Cir. 2003) (citing a "volume of authority" for the proposition that "scope of employment is generally a jury question").

### III.   MOTIONS *IN LIMINE*

"The purpose of the motion *in limine* is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Mendelsohn v. Sprint United Mgmt. Co.*, 587 F. Supp. 2d 1201, 1208 (D. Kan. 2008), *aff'd*, 402 F. App'x 337 (10th Cir. 2010) (internal quotation marks omitted). To be sure, such motions can streamline the trial process; however, "a court is almost always better situated during the actual trial to determine the probative value of evidence. For this reason, some courts defer making *in limine* rulings unless the 'evidence is clearly inadmissible on all potential grounds.'" *Id.* (quoting *Hawthorne Partners v. AT & T Techs., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993)). This Court is guided by those familiar principles in ruling on the motions below.

### A. Defendant Tulsa's MIL

Defendant Tulsa seeks to exclude three pieces of evidence: (1) testimony suggesting that Defendant Russell pleaded guilty to a charge of reckless use of a firearm only because the Chief of Police promised him that he would keep his job; (2) testimony suggesting that terminating Defendant Russell's employment was irrelevant; and (3) testimony or other documentary evidence about unrelated lawsuits or claims against the City of Tulsa.

Plaintiff concedes the first two points, so this Court will grant Defendant Tulsa's motion *in limine* in that respect. As to the evidence about other lawsuits or claims against the Defendant Tulsa, this Court denies the motion without prejudice. Such evidence may be permissible at trial. Plaintiff shall have until March 1, 2025, to file with this Court a brief list explaining, specifically, the lawsuits he would like to address at trial, their relevance, and the legal bases for admitting the lawsuits as evidence.

### B. Defendant Russell's MIL

Defendant Russell's motion *in limine* requests exclusion of the following evidence: (1) any evidence related to the criminal case; and (2) evidence of policy violations, which, he contends, are not sufficient grounds for liability under 42 U.S.C. § 1983. This Court will likewise deny the motion without prejudice. Defendant Tulsa and Plaintiff both oppose Defendant Russell's motion and rightly observe that there are permissible purposes for the admission of the evidence that Defendant Russell wishes to exclude. This Court will consider timely objections to the use of that evidence at trial.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED** that both motions for summary judgment (Dkt. Nos. 56, 61) are **DENIED**, Defendant Russell's motion *in limine* (Dkt. No. 67) is **DENIED**, and Defendant Tulsa's motion *in limine* (Dkt. No. 68) is **GRANTED IN PART AND DENIED IN PART**; and

**IT IS FURTHER ORDERED** that Defendants Russell and Tulsa may renew their evidentiary objections when appropriate at trial, and this Court will consider such objections that are timely raised; and

**IT IS FURTHER ORDERED** that Plaintiff has until March 1, 2025, to file with this Court a brief list explaining, specifically, the lawsuits he would like to address at trial, their relevance to his claims, and the legal bases for their admissibility as evidence.

**SO ORDERED.**

DATED: February 11, 2025

*s/ Gustavo A. Gelpí*
GUSTAVO A. GELPÍ
United States Circuit Judge, Sitting by Designation